**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JULIET KIBULA<br>34 Tabilore Loop<br>Delaware, Ohio 43015,<br><br>　　Plaintiff,<br><br>v.<br><br>DITECH FINANCIAL LLC<br>C/O CT Corporation System<br>1300 East 9th Street<br>Cleveland, Ohio 44114<br><br>and<br><br>DLJ MORTGAGE CAPITAL, INC.<br>C/O CSC-Lawyers Incorporating Service<br>(Corporation Service Company)<br>50 W. Broad Street, Suite 1800<br>Columbus, Ohio 43215 | CASE NUMBER:  2:16-cv-21<br><br>JUDGE:<br><br><br>**JURY DEMAND ENDORSED HEREIN** |

**COMPLAINT FOR MONEY DAMAGES**

　　The following allegations are based upon Plaintiff Juliet Kibula ("Ms. Kibula")'s personal knowledge, the investigation of counsel, and information and belief.  Ms. Kibula, through counsel, alleges as follows:

**I. PRELIMINARY STATEMENT**

1. On August 11, 2006, Ms. Kibula purchased residential real property located at 34 Tabilore Loop, Delaware, Ohio 43015 ("the Tabilore Property") with financing obtained through a first and a second mortgage.

1

2. The second mortgage, which is the subject of this lawsuit, includes a note secured by a mortgage ("the Note") ("the Mortgage") (collectively, "the Second Mortgage Loan"). A copy of the Note and Mortgage are attached as Exhibits A and B.

3. Defendant Ditech Financial LLC ("Ditech") purports to be the servicer of the Second Mortgage Loan.

4. In the summer of 2011, Ms. Kibula an alleged prior servicer of the Second Mortgage Loan notified Ms. Kibula that the Second Mortgage Loan was "charged off" and "written off" and that Ms. Kibula was no longer obligated to make payments on the Second Mortgage Loan.

5. Shortly thereafter, Ms. Kibula stopped receiving correspondence from all entities regarding the Second Mortgage Loan.

6. Ms. Kibula continued to dutifully make payments on her first mortgage and is current on the first mortgage on the Tabilore Property.

7. For over four years, Ms. Kibula did not receive any correspondence from any entities purporting to own or service Ms. Kibula's Second Mortgage Loan.

8. However, during the fall of 2015, Ms. Kibula began receiving telephone calls from Ditech requesting she make payments on the Second Mortgage Loan.

9. Ms. Kibula disputes the amount owed – if any – on her Second Mortgage Loan.

10. Therefore, Ms. Kibula sent a qualified written request for information and notice of error ("the QWR") to Ditech requesting information and an accounting of her Second Mortgage Loan account. A copy of the QWR is attached as Exhibit C.

11. Ditech failed to timely respond to the QWR and failed to provide Ms. Kibula with the information and accounting of the Second Mortgage Loan she requested.

12. Ms. Kibula institutes this action against Ditech for violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 1601, *et seq.* and Regulation X, 12 C.F.R. § 1024.

13. In Ditech's response to the QWR, Ditech indicated that DLJ Mortgage Capital, Inc. ("DLJ") owned Ms. Kibula's Second Mortgage Loan.

14. Ms. Kibula institutes this action against DLJ for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.* and Regulation Z, 12 C.F.R. § 1026.

## II. JURISDICTION & VENUE

15. This Court has subject matter jurisdiction over Count One under RESPA, 12 U.S.C. § 2614, and 28 U.S.C. § 1331 and § 1337.

16. This Court has subject matter jurisdiction over Count Two under TILA, 12 U.S.C. § 2614, and 28 U.S.C. § 1331 and § 1337.

17. This Court has personal jurisdiction over Ditech because Ditech transacts business within this District, the Second Mortgage Loan was incurred within this District, and the property which was the subject of the Second Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

18. This Court has personal jurisdiction over DLJ because DLJ transacts business within this District, the Second Mortgage Loan was incurred within this District, and the property which was the subject of the Second Mortgage Loan is located within this District. *International Shoe v. Washington*, 326 U.S. 310 (1945).

19. Venue is proper in accordance with 28 U.S.C. § 1391(b)(3), as Ditech and DLJ are subject to personal jurisdiction in this District.

### III. PARTIES

20. Each action or inaction alleged herein against Ditech is also an allegation of action or inaction by Ditech's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

21. Each action or inaction alleged herein against DLJ is also an allegation of action or inaction by DLJ's agents, predecessors, successors, employees, contractors, assignees, assignors, and servicers, as appropriate.

22. Ms. Kibula is a natural person currently residing within this Court's jurisdiction at 34 Tabilore Loop, Delaware, Ohio 43015.

23. At all times relevant to this transaction, Ms. Kibula was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

24. At all times relevant to this transaction, Ms. Kibula was and is a **"Person"** within the meaning of TILA, 15 U.S.C. § 1602(e).

25. Ditech is an association with its headquarters in the State of Pennsylvania.

26. At all times relevant to this transaction, Ditech was and is a **"Person"** within the meaning of RESPA, 12 U.S.C. § 2602(5).

27. At all times relevant to this transaction, Ditech was and is an **"Organization"** within the meaning of TILA, 15 U.S.C. § 1602(d).

28. At all times relevant to this transaction, Ditech was and is a **"Person"** within the meaning of TILA, 15 U.S.C. § 1602(e).

29. DLJ is a business with its principal place of business in the State of New York.

30. At all times relevant to this transaction, DLJ is and was a corporation.

31. At all times relevant to this transaction, DLJ was and is an **"Organization"** within the meaning of TILA, 15 U.S.C. § 1602(d).

32. At all times relevant to this transaction, DLJ was and is a **"Person"** within the meaning of TILA, 15 U.S.C. § 1602(e).

33. In August 2006, Ms. Kibula entered into the Second Mortgage Loan with the original lender, Credit Suisse Financial Corporation ("the Original Lender"), to finance the purchase of the Tabilore Property.

34. At the time Ms. Kibula allegedly entered into the Second Mortgage Loan, the Original Lender regularly extended, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charges or may be required.

35. The Second Mortgage Loan was originally payable to the Original Lender.

36. At the time Ms. Kibula allegedly entered into the Second Mortgage Loan, the Original Lender was a person to whom debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness.

37. The Original Lender is and was a **"Creditor"** as defined in 15 U.S.C. 1602(g) (formerly 15 U.S.C. 1602(f)), who makes or invests in residential real estate loans aggregating more than $1,000,000.00 per year.

38. The Tabilore Property is designed principally for the occupancy of from one to four families.

39. The Second Mortgage Loan was and is a **"Federally Related Mortgage Loan"** within the meaning of RESPA, 12 U.S.C. § 2602(1).

40. The Mortgage Loan was purportedly assigned to DLJ.

41. DLJ purports to be the investor and owner of the Mortgage Loan.  (QWR Response, page 1.)

42. At all times relevant to this transaction, DLJ was and is a **"Creditor"** within the meaning of 15 U.S.C. § 1602(g).

43. Ms. Kibula used the Note and Mortgage to borrow money to fund her purchase of her primary residence, the Tabilore Property.

44. At all times relevant to this transaction, Ms. Kibula was and is a **"Borrower"** of a federally related mortgage loan within the meaning of RESPA.

45. Ditech alleges that it is and was the entity responsible for receiving any scheduled periodic payments from Ms. Kibula from June 19, 2011 to the present pursuant to the terms of the Second Mortgage Loan.

46. At all times relevant to this transaction, Ditech engaged and engages in **"Servicing"** Ms. Kibula's residential mortgage loan within the meaning of RESPA, 12 U.S.C. § 2605(i)(3).

47. At all times relevant to this transaction, Ditech was and is a **"Servicer"** within the meaning of RESPA, 12 U.S.C. § 2605(i)(2).

## IV. FACTUAL ALLEGATIONS

48. Ms. Kibula incorporates all paragraphs by reference as though fully written here.

49. On or around October 23, 2015, Ms. Kibula, through counsel, sent the QWR by certified mail to Ditech.  (Exhibit C.)

50. The QWR identified Ms. Kibula and included her account information with Ditech.

51. The QWR contained a statement disputing the fees and charges on Ms. Kibula's account with Ditech.

52. The QWR requested a complete payment history of how payments and charges were applied, including the amounts applied to principal, interest, escrow, and other charges.

53. The QWR requested notices sent to Ms. Kibula regarding the charge off of the Second Mortgage Loan.

54. The QWR requested a current mortgage statement for the Second Mortgage Loan.

55. The QWR requested the current interest rate for the Second Mortgage Loan.

56. The QWR requested a reinstatement quote for the Second Mortgage Loan.

57. The QWR requested a payoff quote for the Second Mortgage Loan

58. The QWR requested a copy of all transfers (or documents indicating a transfer) of the Note and Mortgage.

59. The QWR requested a copy of all property inspections and risk assessments for the Second Mortgage Loan.

60. The QWR requested a copy of all invoices for legal fees for the Second Mortgage Loan.

61. The QWR requested a loss mitigation application for the Second Mortgage Loan.

62. The QWR is and was a qualified written request within the meaning of RESPA, 12 U.S.C. § 2605(e)(1)(B).

63. On October 29, 2015, Ditech received the QWR from Ms. Kibula. A copy of the certified mail receipt is attached as Exhibit D.

64. On November 2, 2015, Ditech sent a written response acknowledging receipt of the QWR. A copy of the acknowledgment of receipt is attached as Exhibit E.

65. On November 12, 2015, Ditech sent a response to the QWR ("the QWR Response"). A copy of the QWR Response is attached as Exhibit F.

66. Ditech sent no further correspondence to Ms. Kibula in response to Ms. Kibula's QWR.

67. Ditech failed to state in its QWR Response that it had investigated the disputed fees and charges.

68. Ditech failed to conduct a reasonable investigation into the errors asserted in the QWR before sending the QWR Response.

69. The QWR Response only included fourth-page payment history labelled "All History" that excluded any payment history from the August 11, 2006 origination of the Second Mortgage Loan through June 19, 2011.  (QWR Response, page 41.)

70. The QWR Response provided an incomplete payment history of Ms. Kibula's Second Mortgage Loan.

71. The QWR Response did not include a complete payment history of how Ditech or alleged prior servicers of the Second Mortgage Loan applied payments and charges to the account, including the amounts applied to principal, interest, escrow, and other charges.

72. The QWR Response failed to include any notices sent to Ms. Kibula regarding the charge off of the Second Mortgage Loan.

73. The QWR Response failed to include a current mortgage statement for the Second Mortgage Loan.

74. The QWR Response failed to include the current interest rate for the Second Mortgage Loan.

75. The QWR Response indicated that "your client's loan *estimated* reinstatement amount is $36,130.01. This quote may not include the full past due balance and any associated legal fees and cost owed at that time of your request, or any newly incurred charges that will be due within the next thirty (30) days." (emphasis added) (QWR Response, page 1.)

76. The QWR Response failed to include a reinstatement quote for the Second Mortgage Loan.

77. The QWR Response failed to include a payoff quote for the Second Mortgage Loan.

78. The QWR Response included a purported copy of the Note and the Mortgage. (QWR Response, pages 25-40.)

79. The copy of the Note included in the QWR Response is allegedly made payable to the Original Lender. (QWR Response, pages 37-40.)

80. However, in its QWR Response, Ditech alleged that DLJ owned the Note. (QWR Response, page 1.)

81. The QWR Response failed to include a copy of the Note with any indorsements or allonges to the Note that transfer an interest in the Note to DLJ.

82. Further the QWR Response failed to include a copy of any Mortgage Assignments that transfer an interest in the Mortgage to DLJ.

83. The QWR Response failed to include a copy of all property inspections and risk assessments for the Second Mortgage Loan – or state that there are no responsive documents.

84. The QWR Response failed to include a copy of all invoices for legal fees for the Second Mortgage Loan – or state that there are no responsive documents.

85. The QWR Response failed to include a copy of the forms to submit a loss mitigation application for the Second Mortgage Loan.

86. The QWR Response failed to indicate why it could not provide the documents and information that Ms. Kibula sought in her QWR.

87. As a result of Ditech's actions, Ms. Kibula suffers severe emotional distress, including anxiety, stress, and sleepless nights.

88. As a result of Ditech's actions, Ms. Kibula's credit has suffered.

89. As a result of Ditech's actions, Ms. Kibula incurred lost business and employment opportunities.

90. As a result of Ditech's actions, Ms. Kibula incurred the legal fees and expenses of initiating the present lawsuit.

91. As a result of DLJ's actions, Ms. Kibula suffers severe emotional distress, including anxiety, stress, and sleepless nights.

92. As a result of DLJ's actions, Ms. Kibula's credit has suffered.

93. As a result of DLJ's actions, Ms. Kibula incurred lost business and employment opportunities.

94. As a result of DLJ's actions, Ms. Kibula incurred the legal fees and expenses of initiating the present lawsuit.

## V. COUNT ONE – RESPA

95. Ms. Kibula incorporates all paragraphs by reference as though fully written here.

96. Ditech's actions described herein constitute violations of RESPA, 12 U.S.C. § 2605€ and Regulation X, 12 C.F.R. § 1024.35 and 12 C.F.R. § 1024.36.

97. Ditech failed to conduct an investigation into the alleged errors on Ms. Kibula's account with Ditech, in violation of RESPA, 12 U.S.C. § 2605(e)(2)(B) and § 2605(e)(2)(C), and Regulation X, 12 C.F.R. § 1024.35(e)(A), § 1024.35(e)(B).

98. Ditech failed to conduct an investigation into Ms. Kibula's account with Ditech before sending the QWR Response, in violation of RESPA, 12 U.S.C. § 2605(e)(2)(B).

99. Ditech failed to remove or substantiate the disputed fees and charges on Ms. Kibula's account with Ditech, in violation of RESPA, 12 U.S.C. § 2605(e)(2)(A).

100. Ditech failed to provide Ms. Kibula the information she sought in her QWR, in violation of RESPA, 12 U.S.C. § 2605(e)(2)(B) and § 2605(e)(2)(C), and Regulation X, 12 C.F.R. § 1024.36(d).

101. Ditech failed to provide Ms. Kibula an explanation of why the information she requested in the QWR is unavailable or cannot be obtained by Ditech, in violation of RESPA, 12 U.S.C. § 2605(e)(2)(C), and Regulation X, 12 C.F.R. § 1024.36(d).

102. Ditech failed to provide Ms. Kibula with a written explanation stating the reasons for which Ditech believes Ms. Kibula's account with Ditech is correct, in violation of RESPA, 12 U.S.C. § 2605(e)(2)(B).

103. Ditech regularly fails to completely respond to the requests of its borrowers.

104. Ditech failed to comply with the requirements of RESPA by failing to investigate the charges and fees disputed in the QWR, failing to provide Ms. Kibula all the

information requested in her QWR, and by failing to provide Ms. Kibula with a written explanation of why Ditech believes Ms. Kibula's account is correct.

105. Ditech engaged in a pattern or practice of noncompliance with the requirements of RESPA.

106. Ms. Kibula incurred $ 4.16 in postage in copies, and $ 117.00 in attorney's fees in sending the QWR to Ditech.

107. As a result of Ditech's actions, Ms. Kibula suffers severe emotional distress, including anxiety, stress, and sleepless nights.

108. Ditech is liable to Ms. Kibula under this Count for its RESPA violations in an amount equal to or greater than: statutory damages in excess of $2,000.00, actual damages for each of Ditech's violations of RESPA in excess of $25,000.00, and the costs of this action and attorney's fees, including pursuant to 12 U.S.C. 2605(f).

## VI. COUNT TWO – TILA

109. Ms. Kibula incorporates all paragraphs by reference as though fully written here.

110. Ditech's actions described herein constitute violations of TILA, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226 *et seq.*

111. DLJ's actions described herein constitute violations of TILA, 15 U.S.C. § 1601 *et seq.* and Regulation Z, 12 C.F.R. § 226 *et seq.*

112. Ditech received Ms. Kibula's QWR on October 29, 2015.

113. Ditech was required to send an accurate payoff balance within seven (7) business days after receiving the QWR. 15 U.S.C. § 1639g.

114. Ditech was required to send an accurate statement of the total outstanding balance that would be required to satisfy the Second Mortgage Loan in full as of a specified date. 12 C.F.R. § 226.36(c)(1)(iii).

115. Ditech was required to send a payoff quote to Ms. Kibula on or before November 9, 2015.

116. Ditech did not provide a payoff quote to Ms. Kibula on or before November 9, 2015.

117. By failing to provide a payoff quote to Ms. Kibula within seven (7) business days after receiving the QWR, Ditech violated 15 U.S.C. 1639g.

118. By failing to provide an accurate payoff quote to Ms. Kibula within a reasonable time after receiving the QWR, Ditech violated Regulation Z, 12 C.F.R. § 226.36(c)(1)(iii).

119. DLJ is vicariously liable for the actions of Ditech, the servicer of the Second Mortgage Loan.

120. By failing to send a payoff quote for the Second Mortgage Loan, DLJ violated TILA, 15 U.S.C. 1636g.

121. By failing to send a payoff quote for the Second Mortgage Loan, DLJ violated Regulation Z, 12 C.F.R. § 226.36(c)(1)(iii).

122. Ms. Kibula incurred $ 4.16 in postage in copies, and $ 117.00 in attorney's fees in sending the QWR to Ditech.

123. DLJ is liable to Ms. Kibula under this Count for its TILA violations in an amount equal to or greater than: statutory damages in excess of $4,000.00, actual damages for

each of DLJ's violations of TILA in excess of $ 25,000.00, and the costs of this action and attorney's fees, including pursuant to 15 U.S.C. § 1640.

## VII. PRAYER FOR RELIEF

**WHEREFORE**, Ms. Kibula respectfully prays that this Court:

A. Assume jurisdiction of Ms. Kibula's claim;

B. Grant judgment in favor of Ms. Kibula on her claim;

C. Grant Ms. Kibula the maximum damages she seeks on her Count, including the maximum statutory damages available under each claim where statutory damages are available, and the maximum economic and non-economic damages available, including actual, emotional, general, punitive, and other damages;

D. Award Ms. Kibula the costs of this litigation, including filing fees and costs;

E. Award Ms. Kibula her attorney's fees;

F. Award such other relief as the court deems appropriate.

Dated this 11th day of January, 2016

        Respectfully Submitted,
        DOUCET & ASSOCIATES, CO., LPA


        */s/ Audrey J. Balint*
        Audrey J. Balint (0092153)
        *Attorney for Plaintiff Juliet Kibula*
        700 Stonehenge Parkway, Suite 2B
        Dublin, OH 43017
        (614) 944-5219 PH
        (818) 638-5548 FAX
        Audrey@TroyDoucet.com

## JURY TRIAL DEMANDED

Ms. Kibula respectfully requests a jury trial on all triable issues.

                                              */s/ Audrey J. Balint*
                                              Audrey J. Balint (0092153)